G. Murray TURNER, Appellant,

v.

William M. CLARY, Jr., Appellee.

No. 10A04–9208–CV–288.

Court of Appeals of Indiana,
Fourth District.

Jan. 25, 1993.

John G. Montgomery, Jeffersonville, and Dean G. Malone, Mulhall, Turner, Hoffman & Coombs, Louisville, KY, for appellant.

Kenneth R. Abbott, Clary, Hess, Guilfoyle, Thomas & Abbott, Jeffersonville, for appellee.

CONOVER, Judge.

Third Party in Interest–Appellant G. Murray Turner (Turner) appeals from the trial court's release of a ten thousand dollar ($10,000) cash bail bond to Plaintiff–Appellee William M. Clary, Jr. (Clary).

We reverse.

One issue is raised for our consideration:

whether the trial court erred in concluding Clary's right to the cash bail bond was superior to Turner's interest.

In March 1991, Richard Walker (Walker) and Anthony Clemente (Clemente) hired Clary, an Indiana attorney, to represent Clemente with respect to several criminal matters in Clark County, Indiana. Their agreement provided that Clary would be paid $20,000 for his services. Walker had posted a $10,000 cash bail bond for Clemente in the criminal cases pending in Clark County, but their agreement with Clary made no reference to the bail.

In April 1991, Turner, a Kentucky attorney, was hired to represent Clemente with respect to several criminal matters in "Jefferson Circuit Court"[1] and in a federal district court in Kentucky. On April 25, 1991, Walker assigned to Turner all of his rights, title and interest in the cash bail bond posted for Clemente in the pending criminal cases in Clark County. The assignment provided the sums were assigned as partial payment of the attorney's fees owed to Turner.

On November 13, 1991, Clary filed suit against Walker and Clemente, claiming they had breached their representation agreement. That same day, Clary obtained a pre-judgment attachment of Walker's interest in the $10,000 cash bail bond posted in Clark County, which was delivered to the Clark County Sheriff. Clary's motion for a pre-judgment attachment noted that Clary believed Walker had attempted to assign the cash bail bond to an attorney in Kentucky. On November 15, 1991, Turner filed a motion to release the assigned funds, including a copy of the assignment, with the trial court.

On January 6, 1992, Clary obtained a default judgment against Walker and Clemente. On February 26, 1992, the trial court held a hearing to determine the proper disposition of the $10,000 cash bail bond. The State appeared and indicated that, while a motion for forfeiture of the bond had previously been filed, the State no longer claimed any interest in the bond, as Clemente was in custody. Walker also appeared and declaimed any interest in the bond.

At the hearing, Clary argued his lien was superior to Turner's because Turner had not perfected his interest in the bond pursuant to the provisions of the Uniform Commercial Code (UCC), and therefore Turner's claim did not have priority over the pre-judgment attachment. On April 22, 1992, the trial court issued its judgment, concluding Clary's lien was superior to Turner's as a matter of law, and ordered the $10,000 cash bail bond to be released to Clary. This appeal ensued.

On appeal, Clary retreats from his position at trial that Turner's interest was not perfected in accordance with the provisions of the UCC, accepting Turner's argument that the UCC is inapplicable to the assignment in question here. In the alternative, Clary urges the trial court's judgment should be affirmed because Walker's assignment to Turner constituted an equitable assignment which is inferior to his lien.

Clary claims Walker did not have a present interest in the cash bail bond which was capable of being assigned to Turner. Clary posits that Walker's right to the return of the $10,000 is a future interest, growing out of circumstances not yet in existence,

1. The record does not disclose whether the "Jefferson Circuit Court" referred to is in Indiana or Kentucky.

and therefore Walker's assignment of that right constituted an equitable assignment.

Relying on *Interstate Finance Corp. v. Dodson* (1938), 105 Ind.App. 513, 12 N.E.2d 989, and *Methodist Hospital of Ind., Inc. v. Town & Country Mut. Ins. Co.* (1964), 136 Ind.App. 184, 197 N.E.2d 773, Clary argues Walker's equitable assignment did not transfer any present right in the cash bail bond to Turner and therefore, at the disposition hearing, Turner could only assert Walker's (the assignor's) rights to the bond. Since Walker's interest in the bond was subject to his judgment lien, Clary believes his lien was superior to Turner's interest.

█ The transference of money or property to be acquired in the future pursuant to an equitable assignment passes no present interest because the property is not yet in existence, and the equitable assignment merely allows the assignee to assert the assignor's claim when the property comes into existence. *Methodist, supra; Interstate, supra.*

█ However, we cannot agree with Clary's characterization of the assignment as equitable. While the parties have cited no authority describing a depositor's interest in a cash bail bond, and we have uncovered no pertinent case law, we conclude the law with respect to general bailment provides sufficient guidance for the resolution of this issue.

█ A bailment is an express or implied agreement between a bailor and a bailee in which the bailee is entrusted to accomplish a specific purpose with the bailor's personal property and when the purpose is accomplished, the property is returned to the bailor. *Norris Automotive Service v. Melton* (1988), Ind.App., 526 N.E.2d 1023. Similarly, when a cash bail bond is posted to secure the release of a criminal defendant, the funds are held by the clerk while the defendant is at large and returned to the depositor unless the bond is forfeited due to the defendant's failure to appear. *See generally* IND.CODE 35–33–8 and 35–33–9; *see also State v. Long* (1991), Ind.App., 568 N.E.2d 1108, *trans. denied.*

█ As a general rule, a bailment involves no transfer of ownership and the bailee acquires only a possessory interest in the property during the bailment. *McDonald's Chevrolet, Inc. v. Johnson* (1978), 176 Ind.App. 399, 376 N.E.2d 106. Accordingly, the deposit of a cash bail bond would not extinguish the depositor's interest in the bond until the bond was actually forfeited. This conclusion is supported by this court's decision in *Long, supra,* in which we concluded a judgment of forfeiture of a cash bail bond must be entered before the clerk could transfer the money to the State Auditor. So, while the money posted as a cash bail bond is subject to forfeiture, there is no reason to conclude that a depositor loses his present interest in the funds deposited.

█ Contrary to Clary's assertions, the money deposited as a cash bail bond is not money to be acquired in the future, rather, it is money that exists in the present but is subject to a condition which might occur in the future. We therefore conclude Walker had a present interest in the $10,000 he had deposited as a cash bail bond for Clemente which could be transferred to Turner.

█ General assignment law provides that a valid assignee takes priority over subsequent creditors of the assignor who had no lien on the subject matter of the assignment at the time it was made. *Middle West Roads Co. v. Peoples Nat. Bank & Trust Co.* (1936), 210 Ind. 437, 4 N.E.2d 187; 6A C.J.S. *Assignments* § 81 (1975). And, absent some statutory provision, no notice is required to establish the priority of the assignee's interest over subsequent creditors of the assignor. 6A C.J.S. *Assignments* § 81 (1975); 3 I.L.E. *Assignments* § 26 (1978).

█ Now that Clary has abandoned his previous position that the UCC required Turner to perfect his interest in the cash bail bond, applying general assignment law, it appears the trial court erred when it concluded Clary's lien was superior to Turner's interest. Walker's interest in the cash bail bond passed to Turner when he

executed the assignment on April 25, 1991. Therefore Walker had no interest in the bond to attach when Clary filed his pre-judgment lien on November 13, 1991. Turner's interest was obtained prior to Clary's, so the $10,000 cash bail bond should have been released to Turner.

Judgment reversed and remanded for further proceedings consistent herewith.

MILLER and RUCKER, JJ., concur.