Michael E. IEMMA, Appellant–Plaintiff,

v.

ADVENTURE RV RENTALS, INC., and Auto–Owners Insurance Co., Appellees–Defendants.

No. 20A03–9307–CV–240.

Court of Appeals of Indiana, Third District.

April 28, 1994.

Anthony J. Iemma, Iemma & Hughes, Elkhart, for appellant.

Robert J. Konopa, Konopa & Murphy P.C., South Bend, for appellee Auto–Owners Insurance Co.

HOFFMAN, Judge.

Appellant-plaintiff Michael E. Iemma appeals from a grant of summary judgment in favor of appellees-defendants Adventure RV Rentals, Inc. (Adventure RV) and Auto–Owners Insurance Co. (Auto–Owners) and a denial of his motion for summary judgment in a dispute arising from an insurance claim filed by Iemma with Auto–Owners, Adventure RV's insurance carrier.

The undisputed facts disclose that Adventure RV, located in Elkhart, Indiana, is a corporation which deals primarily in the storing and repair of recreational vehicles and other related equipment. At all times pertinent to this dispute, Richard Dorman was its sole owner and president. He was also a director of the corporation.

In May 1981, Auto–Owners issued a policy to insure the premises of Adventure RV. The policy listed Adventure RV as the primary insured. Dorman was also listed on the policy as an additional insured.

In June 1981, Iemma brought his 32–foot–long race car trailer to Adventure RV for repairs on a malfunctioning electric step. Thereafter, on June 25, 1981, a fire broke out on the premises of Adventure RV. Iemma's trailer was destroyed. Iemma sought reimbursement for his lost trailer by filing a series of claims with Auto–Owners under Adventure RV's policy. Auto–Owners denied his claims.

Iemma then filed suit against both Adventure RV and Auto–Owners. Count I of Iemma's complaint, directed towards both Adventure RV and Auto–Owners, claimed direct insurer liability. Count II requested punitive damages against Auto–Owners stemming from its manner of handling Iemma's claims. Count III, directed only at Adventure RV, alleged that Adventure RV, as bailee of the trailer, breached its duty of care.

On March 2, 1983, Iemma filed a motion for summary judgment against Auto–Owners on Counts I and II of his complaint. He also filed a motion for summary judgment against Adventure RV on Count III of his complaint on July 17, 1984.

While these motions were pending, the authorities determined that the Adventure RV fire was the result of arson. Dorman was eventually arrested and charged in con-

nection with this crime. A jury convicted Dorman and he appealed.

On February 12, 1985, the trial court determined that Iemma's request for summary judgment was inappropriate for decision at the time due to the pendency of Dorman's appeal. Consequently, the motion was denied. However, the court directed Iemma to request a rehearing on the motions after resolution of Dorman's appeal.

On December 13, 1991, after Dorman's conviction was affirmed by the Court of Appeals of Indiana, Iemma again requested summary judgment on Counts I and III of his complaint. On January 27, 1992, Auto–Owners responded and also requested summary judgment in its favor.

On February 10, 1993, the trial court denied Iemma's request for summary judgment as to both defendants. Instead, it granted summary judgment in their favor. This appeal ensued.

Iemma raises several issues on appeal which we restate as:

(1) whether the trial court erred in granting summary judgment in favor of Adventure RV and denying summary judgment in his favor on the issue of Adventure RV's liability for the value of the trailer; and

(2) whether the trial court erred in granting summary judgment in favor of Auto–Owners and denying summary judgment in his favor on the issue of his claim under Adventure RV's policy.

■ The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* Our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994, *reh. denied.* Summary judgment will be affirmed on appeal if it is

sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Ind.Trial Rule 56(C).

■ Iemma contends that the trial court erred in granting summary judgment in favor of Adventure RV and denying his motion for summary judgment on the issue of Adventure RV's liability for his destroyed trailer. More specifically, he claims that a bailment relationship existed between himself as bailor and Adventure RV as bailee. Iemma argues that by failing to deliver the trailer on demand, Adventure RV breached its duty of care and as such is liable to Iemma for its full value.

■ A bailment is an express or implied agreement between a bailor and a bailee in which the bailee is entrusted to accomplish a specific purpose with the bailor's personal property; when the purpose is accomplished, the property is returned to the bailor. *Turner v. Clary* (1993), Ind.App., 606 N.E.2d 878, 880. No transfer of ownership occurs. *Id.* A bailment arises when: (1) personal property belonging to a bailor is delivered into the exclusive possession of the bailee, and (2) the property is accepted by the bailee. *Norris Automotive Service v. Melton* (1988), Ind.App., 526 N.E.2d 1023, 1025.

It is undisputed that Iemma delivered his trailer to Adventure RV which accepted it. Delivery was made with a specific purpose, that is, for Adventure RV to make repairs on a malfunctioning electric step. When the fire occurred, the trailer was on Adventure RV's premises and in its exclusive possession. Thus, a bailment existed.

■ The standard of care owed by a bailee to a bailor is measured by the amount of benefit each party derives from the bailment.[1] *Id.* However, a bailee may be guilty of conversion where the object of the bailment is destroyed by his willful or positive acts. *Daugherty v. Reveal* (1913), 54 Ind. App. 71, 78, 102 N.E. 381, 384. Although the issue of whether a bailee has met the applicable standard of care is normally a question of

---

1. The bailee must use slight care when the bailment is for the sole benefit of the bailor, great care when the bailment is for the sole benefit of the bailee, and ordinary care when the bailment is for the mutual benefit of the bailor and bailee. *Norris,* 526 N.E.2d at 1025.

fact for the trier of fact, *Norris,* 526 N.E.2d at 1025, the undisputed facts disclose that Dorman's acts of arson were the direct cause of Iemma's trailer being destroyed. His acts of arson, being positive and willfull, *see* IND. CODE § 35–43–1–1 (1981 Supp.), support the conclusion, as a matter of law, that Dorman is liable for the full value of Iemma's trailer under a theory of conversion.

■■■ Next, Iemma contends the trial court erred by granting summary judgment in favor of Auto–Owners and denying his motion for summary judgment on the issue of Auto–Owner's duty to cover Iemma's claim. Iemma does not dispute that due to his acts, the policy is void as to Dorman.[2] Rather, he alleges *inter alia* that Adventure RV is an innocent co-insured entitled to coverage.

■■■ Iemma is correct that under certain circumstances the wrongful acts of one insured under a fire policy are not imputed to other innocent co-insureds to whom recovery is still available. *See American Economy Ins. Co. v. Liggett* (1981), Ind.App., 426 N.E.2d 136. In general, whether or not there is recovery depends on whether the co-insureds' obligations and interests are considered to be joint or severable.

> *McCauley Enterprises v. New Hampshire Ins. Co.* (D.Conn.1989), 716 F.Supp. 718, 720;
>
> *see also* Schaefer (Right Of Innocent Insured To Recover Under Fire Policy Covering Property Intentionally Burned By Another Insured), Annotation, 11 A.L.R. 4th 1228 (1982).

If rights and obligations are deemed to be joint, then recovery is generally not allowed. 11 A.L.R. 4th at 1229. When they are severable, then the wrongful acts of one co-insured are not imputable to other innocent co-insureds and recovery is possible. *Id.* at 1231.

Iemma argues that Adventure RV, as a corporation and separate legal entity, cannot be imputed with any wrongdoing committed by its co-insured Dorman. As such, it should not be denied coverage. Auto–Owners dis-

agrees. It claims that since the policy is void as to Dorman, it is void as to any and all potential insureds.

■■■ An insurance policy is a contract. Thus, it is subject to the same rules of interpretation as are other contracts. The purpose of this Court on appeal is to ascertain and enforce the intent of the parties to the policy. Construction of an insurance policy, as a contract, is a question of law for which summary judgment is particularly appropriate. *Pennington v. American Family Ins. Group,* (1993), Ind.App., 626 N.E.2d 461, 464.

Iemma relies heavily on *Liggett.* In *Liggett,* a husband and wife were co-insureds under a homeowners insurance policy. While the policy was in effect, a fire destroyed their home. The husband died in the fire. The insurance carrier subsequently denied coverage to the wife claiming that the fire was due to acts of arson by the co-insured husband.

On appeal, this Court affirmed the grant of summary judgment in favor of the wife on the issue of her recovery under the policy. The *Liggett* Court held that even if the co-insured husband did intentionally start the fire, she was still entitled to coverage.

In *Liggett,* under a written exclusion, the policy was void if the insured "willfully concealed or misrepresented any material fact" or if there was any "fraud or false swearing" by the insured relating to the insurance. *Liggett,* 426 N.E.2d at 138. The husband, dead, was no longer an insured. The Court reasoned that since the wife, the only "insured" left under the policy, was absent from the home at the time of the fire and entirely innocent of any wrongdoing, such a provision could not have applied to deny her coverage. *Id.*

■■■ There being no applicable express exclusion, coverage could only be denied if any "implied exceptions" existed. *Id.* at 141. "Implied exceptions" are those exceptions which are not expressly written into insurance contracts but which have been created

---

2. The law does not allow a guilty party to profit from his wrongdoing. *Liggett,* 426 N.E.2d at 140. As a matter of public policy, since Dorman committed acts of arson to gain the proceeds of the insurance policy, he is barred from recovery.

to deny coverage where public policy concerns mandate such a result; under the facts of *Liggett,* none existed. *Id.* Again, since the guilty co-insured husband died in the fire, there was no prospect of him benefitting either directly or indirectly from his wrong by allowing the wife to recover under the policy. Since the wife did not commit any fraud, allowing her recovery would neither promote insurance fraud nor prevent the deterrence of crimes such as arson.

In the present case, Auto–Owners points to two written provisions which it claims makes the policy void.

"CONDITIONS: 1. This *entire policy shall be void if whether before or after a loss,* the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or in the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto."

\* \* \* \* \* \*

"F. CONCEALMENT OR FRAUD: This policy is void if *any* insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." (Emphasis added.)

On the policy, Adventure RV is the listed "insured." Dorman is the only listed "additional insured." Following the reasoning of *Liggett,* if Adventure RV is deemed to be entirely innocent of wrongdoing, then it is entitled to coverage under the policy. If, however, Dorman's acts of arson can be attributed to Adventure RV, it would no longer be an innocent co-insured and the above exclusion would apply to make the entire policy void.

Iemma correctly notes that in general, a corporation is an independent legal entity separate from its shareholders. *Benner–Coryell Lbr. Co. v. Ind. Unempl. Comp. Bd.* (1940), 218 Ind. 20, 25, 29 N.E.2d 776, 778, *reh. denied, cert. denied,* 312 U.S. 698, 61 S.Ct. 741, 85 L.Ed. 1132. However, Iemma appears to argue that by virtue of its separate legal identity, a corporation can never sanction the illegal acts of its officers and directors. He is incorrect. Under certain circumstances where necessary to prevent fraud or injustice on innocent third parties, the fiction of a distinct corporate existence may be disregarded and the corporation held liable for the acts of its shareholders, officers and directors. *See Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind. App., 527 N.E.2d 726, 728, *reh. denied.* The question then becomes whether a corporation such as Adventure RV may be denied coverage for losses resulting from the arsonist acts of its sole owner who is also a director and the president of the corporation.

In this context, several of the "implied exceptions" mentioned in *Liggett* as valid reasons for denying coverage, in the absence of specific exclusions, are present. Unlike the husband in *Liggett,* Dorman would benefit directly from his wrongdoing if coverage were allowed. As sole owner, president, and a director, he would in essence be the primary beneficiary of Adventure RV's profit. There is also a legitimate concern that allowing coverage under these circumstances would promote fraud against insurers and would prevent the deterrence of crimes such as arson. As the Fourth Circuit Court of Appeals stated in *Kimball Ice Co. v. Hartford Fire Ins. Co.* (4th Cir.1927), 18 F.2d 563, 567:

"If recovery could be had ... all that would be necessary would be to turn over the property of a corporation to the exclusive management and control of a single person, who could procure insurance fraudulently and effect the wilful burning of the insured premises, and assert a mere claim of innocence on the part of those interested in the company, who would thereby secure the benefit of the direct fraud."

Further, it should also be noted that from the perspective of the wife in *Liggett,* the fire was accidental and fortuitous. *Liggett,* 426 N.E.2d at 142. By contrast, it would not be logical to hold that the fire was expected from the standpoint of Dorman yet accidental and fortuitous from the perspective of Adventure RV. Although the law does not require one person to foresee the criminal or irrational acts of another, *id.,* it does not follow that Adventure RV, solely owned and controlled by Dorman, should not be imputed with knowledge of Dorman's acts of arson.

In fact, the *Liggett* Court foresaw the potential danger of this type of scenario when it warned, "the arsonist whose business is failing and who cannot sell his property must not be permitted, as a matter of public policy, to find a way out of his dilemma by setting a fire." *Id.* at 140. Moreover, whereas the wife in *Liggett* had a reasonable expectation that coverage would be allowed, a similar expectation does not arise here. Dorman could not have reasonably thought when he purchased the insurance on behalf of himself and Adventure RV, that coverage would still exist to cover any claims that would arise in the event of his own acts of arson.

Other courts in addressing this issue are in agreement with this result.

See *Kimball,* 18 F.2d 563 (corporation could not recover under fire policy when arsonist was owner of 25% of the corporation's stock, was its general manager, was a large creditor of the company, and was in exclusive control of its management);

*D.I. Felsenthal Co. v. Northern Assurance Co., Ltd.* (1918), 284 Ill. 343, 120 N.E. 268 (no recovery for corporation where fire which created loss was set by individual who owned "practically all of the stock in the corporation and who had absolute management and control of its affairs and its property");

*United Gratiot Furn. v. Basic Prop. Ins.* (1987), 159 Mich.App. 94, 406 N.W.2d 239 (for purpose of collecting proceeds under a fire policy, jury could disregard independent corporate existence and hold corporation liable for arsonist acts of shareholder who "controlled the management and the operation of the corporation");

*Miller & Dobrin Furniture Co., Inc. v. Camden Fire Ins. Co., Ass'n* (1959) 55 N.J.Super. 205, 150 A.2d 276 (holding recovery of corporation not available under fire policy after suspected arsonist acts of corporation's treasurer, secretary, director and one of its principal shareholders reasoning corporate form should not be used as a shield to perpetuate injustice and one should not be allowed to benefit by his own wrongdoing);

*General Electric Credit Corp. v. Aetna Casualty & Surety Co.,* (1970), 437 Pa. 463, 263 A.2d 448 (fire insurers not liable to corporate insured where loss occurred due to arson by owners of corporate insured).

Dorman's acts of arson being Adventure RV's, the above-mentioned exclusion does apply to void the entire policy.[3]

The policy being void, Iemma's other arguments relating to its applicability to his claim, need not be addressed. The trial court erred by granting summary judgment in favor of Adventure RV and denying Iemma's motion on the issue of Adventure RV's liability for the destroyed trailer. However, the trial court did not err in granting summary judgment in favor of Auto–Owners on the issue of its duty to cover Iemma's loss. Accordingly, the decision of the trial court is reversed in part and affirmed in part.

Reversed in part and affirmed in part.

STATON and ROBERTSON, JJ., concur.

---

3. Iemma's argument that he is also an innocent co-insured is likewise without merit. He is neither a listed "insured" nor an "additional insured." Iemma directs our attention to an amendment of the definition of insured which adds garage customers as insureds "with respect to the use of automobiles covered by [the] policy...." Even had the policy still been in effect, "automobile" is defined under the Garage Liability Coverage Section as "any type of land motor vehicle, safety trailer, camping or vacation trailer, mobile home trailer or semi-trailer...." "Garage customer" is defined as "any person while using an automobile owned, maintained or used in the garage operations of the insured and furnished or loaned to the customer of the garage or to a prospective purchaser...." (Emphasis added.) As the above language makes clear, Iemma is neither a garage customer under the policy nor is the trailer an insured automobile.