In re the BOND FORFEITURE AM-
WEST SURETY INSURANCE
CO., Appellant–Intervenor,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0010–CR–363.

Court of Appeals of Indiana.

June 25, 2001.

John R. Frechette, Elkhart, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

In this consolidated appeal, Amwest Surety Insurance Co. ("Amwest") appeals from the denial of two motions to be released from bail bond. Amwest raises one issue, which we restate as whether the trial court abused its discretion when it denied both of Amwest's motions to be released from bail bond. We affirm.

The relevant facts follow. On March 24, 1999, the State charged Jorge Martinez by information with two offenses. On the same day, under a separate cause number, the State charged Ricardo Munoz by information with one offense. In both cases, the trial court set bail bonds in the amount

of $50,000.[1] Subsequently, Amwest underwrote bail bonds for Martinez and Munoz, who were released from jail.

On July 14, 1999, Amwest received information that Martinez had moved to a new residence within the jurisdiction without informing Amwest and that Martinez intended to go to Mexico. Amwest believed that Martinez had violated the conditions of his bond by moving without informing Amwest. Amwest called the Elkhart County Sheriff's Department ("the Department") to inform the Department that it would be apprehending Martinez and returning him to the jail. A Department employee informed Amwest that, according to a new policy, the Department would not accept Martinez unless Amwest presented certified copies of the bail bond and an arrest warrant. The Department employee also told Amwest that if its employee apprehended Martinez and brought him to the jail without a certified arrest warrant, the Amwest employee could be charged with making a false arrest.

On July 15, 1999, an Amwest employee went to the trial court's chambers to request an arrest warrant, but Judge Shewmaker refused to see him. Amwest did not file a request on the record for an arrest warrant. Martinez left the jurisdiction and has not returned.

On July 20, 1999, Amwest received information that Munoz had moved to a new residence within the jurisdiction without informing Amwest and that Munoz intended to move to Texas. As was the case with Martinez, Amwest believed that Munoz violated the conditions of his bond by moving without informing Amwest. Am-

west once again contacted the Department and was told that Amwest could not apprehend and surrender Munoz because there was no warrant for Munoz's arrest.[2] Amwest did not file a request on the record for an arrest warrant. Munoz left the jurisdiction and has not returned.

On July 29, 1999, Martinez failed to appear for a pretrial hearing, so the trial court issued a warrant for his arrest and ordered Amwest to surrender Martinez immediately or face late fees and bond forfeiture. Similarly, on August 19, 1999, Munoz failed to appear for a pretrial hearing, so the trial court issued a warrant for his arrest and ordered Amwest to surrender Munoz immediately or face late fees and bond forfeiture.

Subsequently, Amwest filed a motion in Martinez's case to be released from its bail bond. Amwest filed a similar motion in Munoz's case. After hearings, the trial court denied both motions.

■ The sole issue is whether the trial court abused its discretion when it denied both of Amwest's motions to be released from bail bond. Although Indiana cases do not reveal a standard of review for a motion for release from bond, this court has determined that a motion to "withhold declaring a forfeiture" of a bond was reviewable for an abuse of discretion. *Scholl v. State*, 91 Ind.App. 401, 403–404, 170 N.E. 343, 344 (1930). The procedural and factually oriented natures of the two types of motions are similar enough that we shall review the trial court's rulings on Amwest's motions for release from bond for an abuse of discretion.[3]

1. Both cases were assigned to the same trial court.

2. The Department subsequently abandoned this policy and no longer requires sureties to present arrest warrants when they surrender defendants.

3. On a related topic, when Indiana appellate courts address appeals that involve bond forfeitures, the legislature has provided that "the evidence, if any, shall be reviewed." Ind. Code § 27–10–2–10(h). It is unclear whether this provision requires us to weigh the evi-

A " 'bond in a criminal action is in the nature of a contract between government on the one side and the defendant and his surety on the other.' " *Allied Fidelity Ins. Co. by AAA Bail Bonds v. State,* 494 N.E.2d 985, 986 (Ind.Ct.App. 1986) (quoting 8 Am.Jur. 2d Bail and Recognizance § 61 (1980)).[4] When a cash bail bond is posted to secure the release of a criminal defendant, the clerk holds the funds while the defendant is at large and is later returned to the depositor unless the bond is forfeited due to the defendant's failure to appear. *Turner v. Clary,* 606 N.E.2d 878, 880 (Ind.Ct.App.1993). The object of bail prior to trial is to insure the presence of the accused when required, without the hardship of incarceration, before guilt has been established and while the presumption of innocence is to be given effect. *Larkins v. State,* 622 N.E.2d 1299, 1302 (Ind.Ct.App.1993).

Amwest contends that it should have been released from its bail bonds because: 1) it had a statutory right to apprehend and surrender Martinez and Munoz without a certified arrest warrant; and 2) the Department, acting as an agent of the State, interfered with Amwest's right by stating that it would not accept the prisoners without a certified arrest warrant and by threatening Amwest's employee with false arrest. We disagree.

We first address whether the Department's requirement of a certified arrest warrant was proper. This is a question of first impression for Indiana courts. To resolve it we must turn to the statutes on bail bonding, but before doing so it is necessary to review our rules of statutory construction. The interpretation of a statute is a question of law that is reserved for the courts. *State v. Derossett,* 714 N.E.2d 205, 206 (Ind.Ct.App. 1999). The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier,* 702 N.E.2d 351, 354 (Ind.1998). We may not read into the statute that which is not the expressed intent of the legislature. *Derossett,* 714 N.E.2d at 206. In order to discern legislative intent, we look to the plain and ordinary meaning of the words and phrases used in the statute. *State v. J.D.,* 701 N.E.2d 908, 910 (Ind.Ct. App.1998), *trans. denied.* In addition, statutes that relate to the same general subject matter are in pari materia, and they should be construed together in order to produce a harmonious statutory scheme. *Id.*

At the common law, sureties were empowered to seize defendants without an arrest warrant and to return them to the authorities' custody. *See Taylor v. Taintor,* 16 Wall. 366, 83 U.S. 366, 371, 21 L.Ed. 287 (1872) (providing that "[t]he seizure is not made by virtue of new process. None is needed."). However, our legislature has promulgated statutory guidelines applicable to sureties who seek to surrender defendants. The primary statute pertaining to surrendering defendants provides, in relevant part:

(a) The person desiring to make a surrender of the defendant shall be provided a certified copy of the undertakings and a certified copy of the arrest warrant forthwith by the clerk of the court having jurisdiction and shall deliver them together with the defendant to the official in whose

---

dence, and if so, in whose favor the evidence should be weighed. In any event, because we decide this appeal based upon statutory interpretation and undisputed facts, it is unnecessary to address this point.

4. This passage can currently be found in a slightly modified form in 8A Am.Jur. 2d Bail and Recognizance § 51 (1997).

custody the defendant was at the time bail was taken or to the official into whose custody the defendant would have been given if committed, who shall detain the defendant in the official's custody thereon, as upon a commitment, and shall acknowledge the surrender in a written certificate.

Ind.Code § 27–10–2–6(a). This statute seems to require a surety to provide an arrest warrant whenever the surety surrenders a defendant to the authorities. However, Ind.Code § 27–10–2–7 provides:

For the purpose of surrendering the defendant, the surety may apprehend the defendant before or after the forfeiture of the undertaking or may empower any law enforcement officer to make apprehension by providing written authority endorsed on a certified copy of the undertaking and paying the lawful fees therefor.

In addition, Ind.Code § 27–10–2–5(a) provides:

(a) Any time before there has been a breach of the undertaking in any type of bail and cash bond, the surety may surrender a defendant, or the defendant may surrender, to the official to whose custody the defendant was committed at the time bail was taken or to the official into whose custody the defendant would have been given if committed.

Both statutes permit a surety to apprehend and surrender a defendant before the defendant violates the terms of the undertaking. Under those circumstances, it would be difficult to obtain an arrest warrant, and neither statute requires sureties to obtain such a warrant. At the same time, Ind.Code § 27–10–2–6(a) plainly provides that a surety must be provided with a certified copy of the arrest warrant, and must present that warrant to the authorities, in order to surrender the defendant. Thus, there appears to be a conflict among the three statutes.

The apparent conflict is resolved by turning to Ind.Code § 27–10–2–12(a). That statute provides, in relevant part:

(a) If a defendant does not appear as provided in the bond:

(1) the court shall:

(A) issue a warrant for the defendant's arrest; and

(B) order the bondsman and the surety to surrender the defendant to the court immediately; and

(2) the clerk shall mail notice of the order to both:

(A) the bondsman; and

(B) the surety;

at each of the addresses indicated in the bonds.

I.C. § 27–10–2–12(a). Pursuant to this statute, an arrest warrant is issued when a defendant fails to appear, and the trial court sends an order to the surety and bonding agency to surrender the defendant. We read Ind.Code § 27–10–2–6(a)'s requirement that a surety "shall be provided a certified copy of the undertakings and a certified copy of the arrest warrant" as referring to the process set forth in Ind. Code § 27–10–2–12(a). Thus, when a defendant has failed to appear in court, the trial court must issue an arrest warrant pursuant to Ind.Code § 27–10–2–12(a), and the surety must provide a certified copy of that warrant to the authorities when surrendering a defendant pursuant to Ind. Code § 27–10–2–6(a). However, when the surety seeks to surrender a defendant before the defendant has breached the terms of the undertaking, then Ind.Code §§ 27–10–2–5(a) and 27–10–2–7 apply, and the

surety does not need to provide the authorities with an arrest warrant.

Our interpretation of these four statutes complies with our mandate to construe in pari materia statutes together and avoid invalidating statutes or portions thereof. *See J.D.*, 701 N.E.2d at 910. If we read Ind.Code § 27–10–2–6(a) as requiring an arrest warrant whenever a surety seeks to surrender a defendant, then Ind.Code §§ 27–10–2–5(a) and 27–10–2–7 are, as a practical matter, invalid. On the other hand, if we read Ind.Code §§ 27–10–2–5(a) and 27–10–2–7 as providing that a surety never needs to provide the authorities with a certified copy of a warrant when surrendering a defendant, then part of Ind.Code § 27–10–2–6(a) is rendered inoperative. Our interpretation of the four statutes gives all of them full effect and results in a harmonious statutory scheme.

█ We find support for our interpretation in an opinion of the Indiana Attorney General, 1990 Op. Ind. Att'y Gen. No. 2.[5] That opinion provides that a surety retains its "authority to apprehend the defendant under Indiana Code Section 27–10–2–7 in the absence of the warrant." 1990 Op. Ind. Att'y Gen. No. 2. Furthermore, on June 15, 1999, the Commissioner of the Indiana Department of Insurance issued a memorandum on this point. That memorandum concludes that a surety does not need to obtain a certified arrest warrant if he or she meets the requirements of Ind.Code §§ 27–10–2–5 or 27–10–2–7 in full. The memorandum provides that Ind. Code § 27–10–2–7, which permits a surety to seize a defendant before a breach of the undertaking has occurred, would be rendered "meaningless" if sureties were al-

ways required to petition the trial court for a certified arrest warrant upon learning that a defendant was about to breach the terms of the bond. Record, p. 36. Based upon our interpretation of the governing statutes, and the persuasive authority of the Attorney General and the Commissioner of the Department of Insurance, we conclude that when a surety seeks to apprehend and surrender a defendant before the trial court has determined that the defendant is absent and issues an arrest warrant, the surety does not need to obtain a certified copy of an arrest warrant and present it to the authorities. *See* Ind. Code §§ 27–10–2–5 and 27–10–2–7.

█ Turning to the case at bar, Amwest had received information that both Martinez and Munoz had moved within the jurisdiction without informing Amwest. Ind.Code § 27–10–2–5 provides that a defendant who changes his address without notifying the surety "shall be surrendered without the return of premium for the bond." Thus, Amwest had a statutory basis for apprehending Martinez and Munoz, and pursuant to Ind.Code § 27–10–2–5 Amwest was not required to obtain arrest warrants to present to the authorities when surrendering Martinez and Munoz. Ind.Code § 27–10–2–5; *see also* Ind.Code § 27–10–2–7.

█ Next, we must address the second part of Amwest's claim, which is that the Department interfered with Amwest's right to surrender the defendants. Here, before taking Martinez into custody, an Amwest employee called the Department to announce that he would be surrendering Martinez. The Department informed the employee that he could not surrender Mar-

---

5. We recognize that the Attorney General's opinion was issued before the legislature amended Ind.Code § 27–10–2–6(a) in 1995. Prior to 1995, Ind.Code § 27–10–2–6(a) provided that a surety need only produce a certi-fied copy of the undertaking in order to surrender a defendant. *See* Ind.Code § 27–10–2–6(a) (1985). Nevertheless, we find the opinion's reasoning regarding Ind.Code § 27–10–2–7 persuasive.

tinez because there was no outstanding warrant for Martinez's arrest, and threatened the employee with false arrest if he apprehended Martinez. Similarly, before apprehending Munoz, an Amwest employee called the Department and was again told that he could not apprehend Munoz because there was no active arrest warrant.

We conclude that the Department's statements were insufficient to constitute interference with Amwest's right to surrender the defendants. At the time that the Department told Amwest not to surrender the defendants, they were still living in the jurisdiction. Amwest should have apprehended Martinez and Munoz and attempted to surrender them to the Department. At that point, if the Department had refused to accept the defendants' surrender and had instead let them go, and if they had subsequently fled from the jurisdiction, then the Department would have interfered with Amwest's right to apprehend and surrender the defendants. Furthermore, although we have determined that Amwest was not required to obtain an arrest warrant prior to apprehending Martinez and Munoz, Amwest could have sought relief in the trial court, either by requesting clarification of its statutory rights or by requesting arrest warrants. However, Amwest did not file a request on the record for relief in either case. Under these circumstances, we cannot agree with Amwest's contention that the Department deprived Amwest of custody of the defendants. *Cf. Weaver v. State,* 56 Ind.App. 394, 399, 105 N.E. 517, 518 (1914) (holding that a sheriff interfered with a surety's right to surrender a defendant when the sheriff arrested the defendant, thereby removing the defendant from the surety's custody). Consequently, the trial court did not abuse its discretion when it denied Amwest's motions to be released from bond.

For the foregoing reasons, we affirm the judgments of the trial court.

Affirmed.

KIRSCH, J. concurs.

MATTINGLY–MAY, J. concurs with separate concurring opinion.

MATTINGLY–MAY, Judge, concurring with separate opinion

I agree with the majority that the trial court did not abuse its discretion in denying Amwest's motions, but I write separately to express my concerns with respect to two issues.

First, the majority is correct that the Department's position did not interfere with Amwest's right to apprehend and surrender the defendants. However, I disagree with the majority's conclusion that "Amwest should have apprehended Martinez and Munoz and attempted to surrender them to the Department." (Maj. Op. at 871.) Amwest had been told by the Department that if it attempted to surrender Martinez and Munoz without active arrest warrants, it could be charged with making a false arrest. I do not believe Amwest was obliged to risk an action for false arrest in order to protect its interests.

The Department's insistence on active arrest warrants did not, however, preclude Amwest from pursuing its rights. It could have, as the majority notes, "sought relief in the trial court, either by requesting clarification of its statutory rights or by requesting arrest warrants." (Maj. Op. at 871.) It was Amwest's failure to do either, and not the Department's actions, that caused the eventual forfeiture of the bonds.

Second, I would clarify that Judge Shewmaker acted appropriately when he declined to see an Amwest employee. Ind.

Judicial Conduct Canon 3 provides that, subject to certain exceptions not applicable here, "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties, concerning a pending or impending proceeding...." The criminal matters involving Martinez and Munoz were pending proceedings. Judge Shewmaker appropriately declined to see an Amwest employee outside the presence of the prosecuting attorney and the defendants' counsel. Further, the judge's actions did not prevent Amwest from filing for an arrest warrant or asking for another hearing on the matter of bond.