Eddie **CANTRELL** and Cantrell Building Services, Inc., Appellants–Defendants,

v.

**PUTNAM COUNTY SHERIFF'S DEPARTMENT** and the State of Indiana, Appellees–Plaintiffs.

No. 67A01–0804–CV–192.

Court of Appeals of Indiana.

Oct. 17, 2008.

Jeffrey A. Boggess, Greencastle, IN, Attorney for Appellant.

Christopher B. Gambill, Wagner Crawford Gambill & Trout, Terre Haute, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Eddie Cantrell ("Cantrell") and Cantrell Building Services, Inc. ("Corporation"), appeal the trial court's judgment for the Putnam County Sheriff's Department ("Sheriff's Department") and the State of Indiana ("State"). Cantrell and the Corporation raise two issues, which we consolidate and restate as whether the trial court erred by ordering the forfeiture of a vehicle owned by the Corporation after Cantrell was arrested with drugs in the vehicle. We affirm.

The relevant facts follow. Cantrell was the president and sole shareholder of the Corporation, which owned a 2005 Cadillac Escalade. The Corporation provided the Escalade to Cantrell as part of his compensation package. In November 2005, Cantrell went on a hunting trip for personal pleasure to Kansas City and drove the Escalade. On November 4, 2005, as Cantrell was returning from the trip, Deputy Dwight Simmons stopped Cantrell for having a false and fictitious registration. During a search of the vehicle,[1] Deputy Simmons found six grams of cocaine in the vehicle. The cocaine was for Cantrell's personal use. Cantrell was ultimately convicted of possession of cocaine as a class C felony.

The Sheriff's Department and the State filed a complaint for forfeiture of the Cadillac Escalade pursuant to Ind.Code §§ 34–24–1. After a bench trial, the trial court entered findings of fact and conclusions of law granting the forfeiture request.

The issue is whether the trial court erred by ordering the forfeiture of the vehicle owned by the Corporation after Cantrell was arrested with drugs in the vehicle. The trial court entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000), *reh'g denied.* In our review, we first consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996). A

---

**1.** The legality of the search is not at issue here.

judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard*, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind.1999).

■ Forfeiture is properly classified as civil in nature. *Katner v. State*, 655 N.E.2d 345, 347 (Ind.1995). "Serving more than a punitive purpose, civil forfeiture proceedings advance diverse legislative interests—while punishing and deterring those who have engaged in illegal drug activity, forfeiture simultaneously advances other non-punitive, remedial legislative goals." *Id.* "First, forfeiture creates an economic disincentive to engage in future illegal acts." *Id.* at 347–348. "It also serves another significant, albeit secondary, purpose. Forfeiture advances our Legislature's intent to minimize taxation by permitting law enforcement agencies, via the sale of property seized, to defray some of the expense incurred in the battle against drug dealing." *Id.* at 348.

The forfeiture of a vehicle is governed by Ind.Code § 34–24–1–1,[2] which provides:

(a) The following may be seized:

　(1) All vehicles (as defined by IC 35–41–1), if they are used or are intended for use by the person or persons in possession of them to transport or in any manner to facilitate the transportation of the following:

(A) A controlled substance for the purpose of committing, attempting to commit, or conspiring to commit any of the following:

\* \* \* \* \*

(vii) Possession of cocaine or a narcotic drug (IC 35–48–4–6).

\* \* \* \* \*

The State must demonstrate by a preponderance of the evidence that the property was subject to seizure. Ind.Code § 34–24–1–4(a).

Cantrell and the Corporation argue that: (1) the State failed to prove a nexus between the vehicle and the cocaine offense, which is necessary under the Indiana Supreme Court's *Katner* decision; and (2) the Corporation did not have knowledge of Cantrell's criminal conduct.

A. *Nexus.*

■ Cantrell and the Corporation first argue that the State failed to prove a nexus between the vehicle and Cantrell's underlying offense. In support of this argument, Cantrell and the Corporation rely upon *Katner*, 655 N.E.2d at 347–349. In *Katner*, the defendant was arrested after a traffic stop and an altercation with police. *Id.* at 347. In the defendant's pocket, the officers discovered a container which held less than 6/100th of one gram of cocaine. *Id.* As a result, the State sought forfeiture of the defendant's vehicle, which he was driving at the time of his arrest. *Id.* The trial court ordered the forfeiture of the vehicle, and this court reversed, holding that there was no nexus between the property seized and the offense upon which the seizure was based. *Id.* (citing

**2.** Nonsubstantive changes were made to the relevant portions of this statute in 2006 and 2007. *See* Pub.L. No. 1–2006, § 518 (eff. Mar. 24, 2006); Pub.L. No. 94–2006, § 11 (eff. July 1, 2006); Pub.L. No. 151–2006, § 13 (eff. July 1, 2006); Pub.L. No. 137–2007, § 34 (eff. July 1, 2007).

*Katner v. State,* 640 N.E.2d 388, 390 (Ind. Ct.App.1994)).

The Indiana Supreme Court accepted transfer and agreed with the Court of Appeals. *Id.* The Supreme Court considered whether Ind.Code § 34–24–1–4(a), "which permits seizure of vehicles used to transport a controlled substance 'for the purpose of committing, attempting[,] ... or conspiring' to possess cocaine, requires the State to show the existence of a relationship—a nexus—between the property sought in forfeiture and the underlying offense, here cocaine possession." *Id.* at 348. The Court concluded that the forfeiture statute "requires more than an incidental or fortuitous connection between the property and the underlying offense." *Id.* at 348–349. The Court held:

In order to assure that an adequate nexus exists between the property sought in forfeiture, and the underlying offense, we hold that the State bears the burden of demonstrating, by a preponderance of the evidence, this nexus: that the property sought in forfeiture was used "for the purpose of committing, attempting to commit, or conspiring to commit" an enumerated offense under § 34–4–30.1–1. This nexus best articulates the threshold of proof that the State must achieve before succeeding in a forfeiture action, and is congruent with § 34–4–30.1–4 which requires the prosecutor at the forfeiture hearing to show, by a preponderance of the evidence, that property is subject to forfeiture under § 34–4–30.1–1. The Indiana forfeiture statute requires more than a mere demonstration that the vehicle's operator possessed cocaine. Rather, under the portion of our statute which we examine today, the State must show that the operator [ (1) ] used ... the vehicle to transport an illicit substance or item listed in the statute, (2) for the purpose of committing possession, attempting to

commit possession, or conspiring to possess the substance or item. The second limitation, requiring the State to show transportation for a specific purpose, serves an important function, i.e. avoiding forfeiture where the operator of a vehicle coincidentally possesses drug residue, but is not transporting the residue, or using the vehicle in any other way to further possession or conspiracy to possess.

*Id.* at 349. The Court concluded:

This nexus requirement is a means to guarantee that the government is seizing actual instruments of the illegal drug trade. The language of the statute is directed toward instruments of this illicit activity, in hopes of retarding, through asset forfeiture, expanding drug commerce. Depriving persons of their property such as vehicles unrelated to the drug trade will do little to advance our Legislature's intent.

*Id.* Quoting the Court of Appeals, the Court determined that "[w]hile the presence of the cocaine residue in the glass tube was sufficient to support Katner's possession conviction, his possession of the substance in his automobile did not constitute 'transportation' of cocaine for the purpose of possessing the drug." *Id.*

The trial court here concluded that *Katner* was distinguishable because the defendant in *Katner* possessed only cocaine residue and, on the other hand, Cantrell possessed six grams of cocaine. We agree. In *Katner,* the defendant was found with cocaine residue in his pocket while he was driving his vehicle. Here, Cantrell admittedly used the vehicle to transport seven grams of cocaine to Kansas on his hunting trip and then used the vehicle to transport his remaining six grams of cocaine back to Indiana. When the vehicle was searched, the cocaine was

found hidden in the vehicle in a cigarette pack and in his luggage. We conclude that Cantrell was transporting the cocaine and using the vehicle to further his possession of the cocaine. The State demonstrated that the vehicle was used to "facilitate the transportation" of the cocaine "for the purpose of committing, attempting to commit, or conspiring to commit . . . [p]ossession of cocaine. . . ." Ind.Code § 34–24–1–4. Consequently, we conclude that the State demonstrated a nexus between Cantrell's possession of the cocaine and the use of the vehicle.

## B. *Knowledge.*

 Because the Corporation, not Cantrell personally, was the owner of the Escalade, the Corporation argues that the trial court pierced the corporate veil to order forfeiture of the vehicle. However, we do not perceive the issue as one of piercing the corporate veil. Piercing the corporate veil involves recovering from a shareholder rather than the corporation where "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice."[3] *Escobedo v. BHM Health Associates, Inc.,* 818 N.E.2d 930, 933 (Ind.2004). Here, the State was not attempting to pierce the corporate veil to recover from the shareholder, Cantrell. Rather, the State was attempting to seize the Corporation's vehicle as a result of Cantrell's actions.

The relevant inquiry is noted in Ind. Code § 34–24–1–4(a), which provides that "[i]f the property seized was a vehicle, the prosecuting attorney must also show by a preponderance of the evidence that a person who has an ownership interest of record in the bureau of motor vehicles knew or had reason to know that the vehicle was being used in the commission of the offense." Thus, the issue is whether the State proved by a preponderance of the evidence that the Corporation "knew or had reason to know that [the Escalade] was being used in the commission of [Cantrell's] offense." *See* Ind.Code § 34–24–1–4(a); *Meister v. State,* 864 N.E.2d 1137 (Ind.Ct.App.2007) (holding that the forfeiture of the mother's vehicle was proper where the mother had reason to know that her son was using her vehicle to transport controlled substances), *reh'g denied, trans. denied, petition for cert. filed* (Jan. 7, 2008).

This raises the question: how can a corporation "know" or "have reason to know"? "A corporation cannot see or know anything except by the eyes or intelligence of its officer; and a corporate body, as a legal entity, cannot itself have knowledge." 3 FLETCHER CYCLOPEDIA OF PRIVATE CORPORATIONS § 787 (2002). "If it can be said to have knowledge at all, that must be the imputed knowledge of some corporate agent." *Id.*

 Indiana courts have held that, generally, the knowledge of an agent acquired while acting in the course of employment will be imputed to the corporation. *Madison County Bank & Trust Co.*

---

**3.** Factors considered in the determination of piercing the corporate veil include: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) comming-ling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Escobedo,* 818 N.E.2d at 933. The State presented no evidence to establish any of these factors.

*v. Kreegar,* 514 N.E.2d 279, 281 (Ind.1987), *reh'g denied; see also Am. Heritage Banco, Inc. v. McNaughton,* 879 N.E.2d 1110, 1116 (Ind.Ct.App.2008) (holding that "the actions and knowledge of employees and agents of a corporation are attributable to the corporation when the actions are done within the scope of employment"). "As an exception to the general rule, if an agent commits an independent fraud for his own benefit, or acts adverse to the interest of the principal, he ceases to act as an agent and his knowledge will not be imputed." *Am. Heritage Banco,* 879 N.E.2d at 1116 (citing *Mid–Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.,* 715 N.E.2d 906, 910 (Ind.Ct.App.1999)). However, there is also an exception to the exception: "[w]here an adverse agent is also the sole representative of the principal in the transaction in question, the principal may once again be charged with the agent's knowledge." *Id.* (citing *First Nat'l Bank of Cicero v. Lewco Secs. Corp.,* 860 F.2d 1407, 1417 (7th Cir.1988), *reh'g denied; In re Dublin Secs., Inc.,* 133 F.3d 377, 380 (6th Cir.1997) ("[W]here the principal and agent are one and the same ... [the sole actor exception] imputes the agent's knowledge to the principal ... because the party that should have been informed was the agent itself albeit in its capacity as principal."), *reh'g denied, cert. denied,* 525 U.S. 812, 119 S.Ct. 45, 142 L.Ed.2d 35 (1998)).

Cantrell and the Corporation argue that "[t]o hold a corporation liable for the criminal acts of its officer, sole owner and/or employee, the corporation must derive a benefit from the criminal act." Appellant's Brief at 10. In general, the Indiana Supreme Court has held that "an employee's wrongful act may ... fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself." *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.,* 547 N.E.2d 244, 247 (Ind. 1989) (discussing respondeat superior liability for the wrongful acts of an employee which are committed within the scope of employment), *reh'g denied; see also Barnett v. Clark,* 889 N.E.2d 281, 284 (Ind. 2008) (noting that "[a]n employee's act is *not* within the scope of employment when it occurs within *an independent course of conduct* not intended by the employee *to serve any purpose of the employer*"). Here, however, we are dealing with the president and sole shareholder of a corporation, not simply an employee of a corporation.

In support of their argument, Cantrell and the Corporation rely upon *Iemma v. Adventure RV Rentals, Inc.,* 632 N.E.2d 1178 (Ind.Ct.App.1994), for the proposition that a corporation must derive a benefit from the criminal acts. However, we must disagree with Cantrell and the Corporation's interpretation of *Iemma.* In *Iemma,* Richard Dorman was the sole owner, president, and a director of Adventure RV Rentals, Inc. ("Adventure RV"). 632 N.E.2d at 1180. In May 1981, Auto–Owners issued a policy to insure the premises of Adventure RV. *Id.* The policy listed Adventure RV as the primary insured and Dorman as an additional insured. *Id.* In June 1981, Michael Iemma brought his trailer to Adventure RV for repairs. *Id.* On June 25, 1981, a fire broke out on the premises of Adventure RV. *Id.* Iemma's trailer was destroyed, and he sought reimbursement for his lost trailer by a claim with Auto–Owners under Adventure RV's policy. *Id.* Auto–Owners denied his claims. *Id.* Dorman was eventually convicted of arson in connection with the fire. *Id.* at 1180–1181. Iemma filed a complaint against Auto–Owners and Adventure RV, and the trial court granted summary judg-

ment to Auto–Owners, concluding that the insurance policy was void as a result of Dorman's misconduct. *Id.*

On appeal, Iemma argued that Auto–Owners had a duty to pay his claim because Adventure RV was an innocent co-owner entitled to coverage. *Id.* at 1182. Iemma argued that Adventure RV, as a corporation and separate legal entity, could not be imputed with any wrongdoing committed by its co-insured Dorman. *Id.* We noted that, in general, a corporation is an independent legal entity separate from its shareholders. *Id.* at 1183. However, we rejected Iemma's argument that, by virtue of its separate legal identity, a corporation can never sanction the illegal acts of its officers and directors. *Id.*

We addressed whether "a corporation such as Adventure RV may be denied coverage for losses resulting from the arsonist acts of its sole owner who is also a director and the president of the corporation." *Id.* We noted that "Dorman would benefit directly from his wrongdoing if coverage were allowed. As sole owner, president, and a director, he would in essence be the primary beneficiary of Adventure RV's profit." *Id.* Moreover, "it would not be logical to hold that the fire was expected from the standpoint of Dorman yet accidental and fortuitous from the perspective of Adventure RV." *Id.* We held that "it does not follow that Adventure RV, solely owned and controlled by Dorman, should not be imputed with knowledge of Dorman's acts of arson." *Id.* at 1184. Consequently, we held that the trial court properly granted summary judgment to Auto–Owners on Iemma's claim. *Id.*

As in *Iemma,* Cantrell, as sole shareholder and president of the Corporation, would directly benefit by a denial of the State's forfeiture request. The trial court was properly concerned that "[i]f [Cantrell's] logic is to be followed, then all people transporting drugs would just incorporate themselves for the avoidance of forfeiture actions." Appellant's Appendix at 12. We conclude that, under these circumstances, Cantrell's knowledge of the cocaine should be imputed to the Corporation. *See, e.g., Am. Heritage Banco,* 879 N.E.2d at 1117 (noting that "it may be that McNaughton, as the majority shareholder, president, chairman of the board, and CEO, was both principal and agent and his knowledge should be imputed to FNBF even though he was acting adverse to FNBF's interests"); 3 FLETCHER CYC. CORP. § 809 ("Where the officer to whom notice is given or by whom knowledge is acquired is in effect the corporation, the notice is generally imputed to the corporation."); *see generally In re Mediators, Inc.,* 105 F.3d 822, 827 (2nd Cir.1997) (holding that, under the sole actor exception, the knowledge of a corporation's sole shareholder would be imputed to the corporation where the sole shareholder was alleged to have stripped the corporation of assets because whatever decisions the sole shareholder made were "by definition, authorized by, and made on behalf of, the corporation"). Because Cantrell's knowledge is imputed to the Corporation, we conclude that the State and Putnam County proved by a preponderance of the evidence that the Corporation knew or had reason to know of Cantrell's possession of drugs in the Escalade. The trial court's order granting the forfeiture of the vehicle is not clearly erroneous.

For the foregoing reasons, we affirm the trial court's forfeiture order.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.