# FOR PUBLICATION



FILED

Dec 20 2013, 6:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LAWRENCE D. NEWMAN**
Newman & Newman, P.C.
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL E. ZANUSSI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A05-1304-CR-173 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
Cause No. 29D03-1208-FD-8306

**December 20, 2013**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Michael E. Zanussi appeals his conviction of Class A misdemeanor criminal recklessness.[1] He presents three issues for our review:

1. Whether the trial court abused its discretion when it denied Zanussi's motion for continuance one day before his jury trial was to begin;

2. Whether the trial court committed fundamental error when it admitted letters Zanussi wrote while in jail before trial; and

3. Whether the State presented sufficient evidence Zanussi committed Class A misdemeanor criminal recklessness.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Zanussi and Danielle Effinger have a child together. On August 25, 2012, Zanussi and their daughter picked up Effinger from her place of employment. The couple began to argue about activity on Effinger's Facebook page. The argument became heated, and Effinger began to cry.

Effinger then indicated she needed to go the grocery store. Zanussi did not want to take her to the store. He demanded she give him her tip money from the day, but Effinger refused to give him the money. Zanussi began driving in the direction of the store and reached to touch Effinger on the leg. Effinger moved her leg away and smacked Zanussi's arm away, and then he hit her in the head and "knocked [her head] into the side of the van right where the seat belt hanger was." (Tr. at 24.)

---

[1] Ind. Code § 35-42-2-2(c)(1).

2

Effinger indicated she was going to leave the vehicle, and when Zanussi pulled up to a stop sign, she unhooked her seatbelt, put her purse on her shoulder, and opened the door "just far enough that it wasn't latched anymore[.]" (*Id.*) Zanussi then "hit the gas and turned the wheel as far as he could, as fast as he could to the left and the door flew open and [Effinger] flew out of the car into the middle of the intersection and scraped [her] shoulder and [her] ankle." (*Id.* at 24-25.) Effinger suffered "road rash," (*id.* at 25), and wounded her ankle. She moved to the side of the road, and Zanussi stopped the vehicle to pick her up. They returned home, and police arrived. The police spoke with Effinger, noted her injuries, and arrested Zanussi.

The State charged Zanussi with Class D felony domestic battery,[2] Class A misdemeanor domestic battery,[3] and Class A misdemeanor criminal recklessness. Zanussi hired private counsel, who was permitted to withdraw on January 29, 2013. He retained replacement counsel on March 14, just five days prior to his jury trial. On March 15, Zanussi's new counsel told the trial court he could be prepared for jury trial on March 19. However, on March 18, counsel filed a motion to continue because he had to travel to Chicago that day. The trial court denied the continuance.

The jury found Zanussi guilty of Class A misdemeanor criminal recklessness but not guilty of the other charges. The trial court sentenced Zanussi to 330 days in jail.

---

[2] Ind. Code § 35-42-2-1.3(b)(2).
[3] Ind. Code § 35-42-2-1.3(a).

**DISCUSSION AND DECISION**

1.    Motion to Continue

When, as here, a party moves for a continuance not required by statute,[4] we review the court's decision for abuse of discretion. *Flake v. State*, 767 N.E.2d 1004, 1008 (Ind. Ct. App. 2002). An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or the record demonstrates prejudice from denial of the continuance. *Id*. Continuances to allow more time for preparation are generally disfavored in criminal cases. *Risner v. State*, 604 N.E.2d 13, 14 (Ind. Ct. App. 1992), *trans. denied*. "Such motions require a specific showing as to how the additional time would have aided counsel." *Robinson v. State*, 724 N.E.2d 628, 634 (Ind. Ct. App. 2000), *trans. denied*.

Zanussi's counsel filed a motion to continue the day before Zanussi's jury trial was to commence. Counsel requested the continuance because:

> Counsel was retained on Thursday 3/14/2013. Counsel confirmed at a status hearing Friday 3/15/2013 that he could be ready. After meeting with Defendant again this weekend and a conflict with the available time since Friday including the need to attend a Chicago Immigration Court hearing in person on Monday 3/18/2013 which could not be done telephonically, Counsel needs a continuance.

(App. at 42.) The trial court denied the motion.

Zanussi argues he was prejudiced by the denial of a continuance because "a new piece

---

[4] Neither party argues Zanussi's motion for continuance was pursuant to statute.

4

of evidence was made available by the State of Indiana the day prior to the jury trial and Zanussi's trial counsel had been unable to communicate with Zanussi until just minutes before the trial began." (Br. of Appellant at 16.) However, the motion makes no mention of new evidence. Counsel requested and was granted time before the trial started to discuss the new evidence with his client, which discussion counsel claimed would take only "about two minutes." (Tr. at 5.) As counsel said during an earlier hearing that he was prepared for trial, there was no explanation in the motion how the continuance would aid in counsel's preparation, and counsel was granted time to discuss the new evidence with Zanussi, the trial court did not abuse its discretion when it denied the continuance. *See, e.g.*, *Whitacre v. State*, 274 Ind. 554, 557, 412 N.E.2d 1202, 1205 (1980) (no abuse of discretion when trial court denied defendant's motion to continue the day before trial).

2.      Admission of Zanussi's Letter from Jail

Zanussi argues the trial court committed fundamental error when it admitted into evidence letters Zanussi wrote to Effinger while he was in jail and Effinger's testimony that the letters were sent from jail. Zanussi did not object to the admission of the letters or Effinger's testimony regarding their origin. The failure to object normally results in waiver and precludes appellate review unless the admission created fundamental error. *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011). Fundamental error is an error "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id.* at n. 1.

Pursuant to Indiana Rules of Evidence 401, relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the

5

action more probable or less probable than it would be without the evidence." Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ." Evid. R. 403. Zanussi argues the admission of the letters, coupled with Effinger's testimony that he sent them from jail, was more prejudicial than probative.

The State offered into evidence six letters Zanussi wrote to Effinger while Zanussi was in jail awaiting trial.[5] Effinger testified Zanussi wrote her the letters "from jail." (Tr. at 32.) Zanussi did not object, though later, during a sidebar conference outside the presence of the jury, Zanussi's counsel stated,

> I just want to double check something. Let me, let me – my client thought this revealed that he was in custody. I don't necessarily think so. I am more concerned over here. He's 100 percent sure he's testifying so I don't think it's an issue. And then here.

(*Id*. at 34.) In response, the State redacted the portions of the letter indicating Zanussi was in jail when he wrote the letters. No additional testimony regarding the letters was offered.

The letters included information regarding the August 25 incident and included Zanussi's requests that Effinger not cooperate in his prosecution. In the letter dated November 1, 2012, Zanussi told Effinger, "The State will drop the charges in April if you stick to what you told the Prosecutor and what you wrote [to] the Judge." (State's Ex. 2R.) In a letter dated November 9, Zanussi told Effinger, "I'm sorry that I have hurt you like I have . . . . I know that I messed up." (State's Ex. 4R.)

In an undated letter, Zanussi told Effinger:

---

[5] It is not clear from the record whether Zanussi was in jail based on the charges in the instant case.

6

I need you to work with me, I need you to not come to court on me, and I need you to drop the no contact order. . . . My life is in your hands, if you don't come to court . . . [t]hey will drop all charges . . . . All you have to do is not communicate with the Prosecutor and just not show.

(State's Ex. 7R.) Zanussi then went on to detail how Effinger should proceed on his court date:

Or if you are really scared and feel that you must show. Wait tell [sic] 4 or 5 pm tell [sic] after my court is over. Check in with the Prosecutor or the Court Room Clerk. Tell them you couldn't find a Baby Sitter, the car wouldn't start, you couldn't find a place to park, you couldn't find the Court Room, you slept in because your alarm didn't go off. You had to work, ect, [sic] ect. [sic].

*Id*. Finally, Zanussi offered Effinger "$500.00 up front and $500.00 when the charges are dropped. They are not going to pay you nothing [sic] to put me away. Me [sic] and my parents are willing to pay you to keep me out." *Id*.

Zanussi does not indicate specifically how the admission of the letters deprived him of a fair trial. The letters, especially Exhibit 7R, are highly probative, as they include statements indicating Zanussi was guilty and asking Effinger not to testify. Effinger's mention that the letters were sent from jail was fleeting, as it happened once, and the State agreed to redact portions of the letters that indicated Zanussi was in jail. As the letters were not more prejudicial than probative, their admission was not an abuse of discretion and did amount to fundamental error. *See, e.g.*, *Suding v. State*, 945 N.E.2d 731, 737 (Ind. Ct. App. 2011) (admission of statement regarding "a prior allegation regarding a kid" was not fundamental error because the statement was fleeting and did not clearly indicate Suding had been convicted of any criminal offense), *trans. denied*.

7

3.    Sufficiency of the Evidence

When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the verdict. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

To prove Zanussi committed Class A misdemeanor criminal recklessness, the State had to present evidence he knowingly performed an act with a vehicle that created a substantial risk of bodily injury to another person. Ind. Code § 35-42-2-2(c)(1). A person engages in conduct knowingly if "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

Effinger testified she felt threatened by Zanussi while riding in their vehicle and indicated she wanted to leave the vehicle. She testified when Zanussi pulled up to a stop sign, she put her purse on her shoulder, and opened the door "just far enough that it wasn't latched anymore." (Tr. at 24.) Zanussi then "hit the gas and turned the wheel as far as he could, as fast as he could to the left and the door flew open and I flew out of the car into the

8

middle of the intersection and scraped my shoulder and my ankle." (*Id*. at 24-25.)

Zanussi argues he did not know that there existed a high probability his actions would result in injury to Effinger because he did not know she was going to leave the vehicle, but that is an invitation for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge credibility of witnesses). Regardless whether he knew Effinger would leave the car, Zanussi had to know the manner in which he turned that corner was unsafe and was likely to cause injury to Effinger. The State presented sufficient evidence Zanussi committed Class A misdemeanor criminal recklessness.

## CONCLUSION

The trial court did not abuse its discretion when it denied Zanussi's motion to continue because Zanussi did not demonstrate the denial prejudiced him. Admission of letters Zanussi wrote to Effinger was not fundamental error because Zanussi did not demonstrate their admission denied him a fair trial. Finally, the State presented sufficient evidence Zanussi committed Class A misdemeanor criminal recklessness. Accordingly, we affirm.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.

9