## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Vinson H. Tate
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Vinson H. Tate,
*Appellant-Defendant,*

v.

State of Indiana, et al.,
*Appellee-Plaintiff*

December 21, 2018

Court of Appeals Case No.
02A03-1705-MI-1204

Appeal from the Allen Circuit Court

The Honorable Stanley A. Levine, Special Judge

Trial Court Cause No.
02C01-1207-MI-1207

**May, Judge.**

[1] Vinson H. Tate appeals the denial of the motion to correct error he filed after the court granted the State's complaint for civil forfeiture of the $3,047.00 found when Tate was arrested for Class A felony dealing in cocaine. We affirm.

## Facts and Procedural History

[2] In the opinion disposing of Tate's direct appeal, we provided the facts leading to Tate's convictions and sentences:

> On June 21, 2012, Fort Wayne Police Department Narcotics Detectives were dispatched to an apartment complex following a call regarding the sale of drugs. Detective Kirschner arrived at the scene and observed a parked, running, and occupied black Suburban in the parking lot. She also saw several individuals approach the vehicle, enter it, exit it, and leave immediately, which is consistent with the sale of drugs. When the driver of the Suburban left the parking lot, Detective Kirschner followed him in an unmarked car. Shortly thereafter, Detective Kirschner told Detective Marc Deshaies, who was driving a car with police emergency lights, that she saw the Suburban's driver cross the center line several times. Detective Deshaies caught up with the Suburban and stopped it.
>
> When Detective Deshaies approached the Suburban, the driver, Tate, was very nervous. The detective looked inside the Suburban with a flashlight and noticed marijuana residue on the top of the console. He asked Tate to exit and step to the rear. As the detective performed a pat-down search of Tate, Tate's legs and buttocks muscles tightened. A search of Tate's Suburban revealed additional marijuana residue. The detective also found three large bundles of cash totaling $3000 in the Suburban's console.

> Detective Deshaies transported Tate to the Allen County Jail, where officers conducted a strip search of Tate and found a folded wad of toilet paper between Tate's buttocks. When the officers unfolded the toilet paper, they discovered a plastic baggie that held fifteen small knotted baggies of cocaine. Six of those baggies contained crack cocaine and nine of the baggies contained powder cocaine. The total weight of the cocaine was 5.74 grams, and it had a street value of $850.
>
> The State charged Tate with dealing in cocaine as a Class A felony and possession of marijuana as a Class A misdemeanor.

*Tate v. State*, No. 02A05-1308-CR-447 (mem. dec.), 31 N.E.3d 34, at *1 (Ind. Ct. App. March 17, 2015).

[3]     Between his initial hearing and trial, Tate repeatedly vacillated between representing himself, being appointed a public defender, and hiring private counsel. *Id*. at *1-*2. In December 2012, Tate filed a motion to suppress the cocaine found on his person, and the trial court denied his motion after a hearing. *Id*. at *2. Tate represented himself at trial on April 10, 2013. *Id*. The jury found him guilty as charged, and on July 19, 2013, the court imposed a forty-five-year sentence, with ten of those years suspended. *Id*. at *4. Tate appealed his convictions and sentence, and we affirmed. *See id*. at *10.

[4]     Shortly after the State filed criminal charges against Tate, it also filed a civil complaint against Tate for forfeiture of property, requesting the court order forfeited the 2002 Suburban Tate had been driving when arrested and the $3,047 found that night on his person and in the Suburban. Then, in January 2013, the State moved to dismiss the 2002 Suburban from the forfeiture action

because "there is a lien on the vehicle that does not justify the forfeiture." (App. Vol. 3 at 2.) At a hearing on May 31, 2013, at which Tate did not appear, the State informed the court it could not locate Tate to provide him with notice of the proceedings. At that hearing, the forfeiture court granted the State's motion to dismiss the Suburban from the action.

[5] Trial on the merits of the forfeiture of the $3,047 was set for September 13, 2013. Tate did not appear. The court ordered Tate's $3047 forfeited to the State. In January 2014, Tate contacted the forfeiture court for a copy of the chronological case summary. In response, on February 3, 2014, the court entered an order that explained to Tate the proceedings that had been held and the order that forfeited his money.

[6] In September 2014, Tate asked the court for clarification of the judgment that had been entered in the forfeiture proceeding. The court construed Tate's letter as a motion to reconsider the September 13, 2013, judgment forfeiting the $3,047. The trial court held a hearing at which Tate appeared via telephone. The court allowed Tate to argue about procedural errors but did not allow Tate to argue about the merits of the forfeiture. The court denied Tate's motion to reconsider. Tate filed a motion to correct error, which the court denied, and Tate filed a notice of appeal. The State first moved to dismiss the appeal on procedural grounds and then, when we denied that motion, the State requested remand for the forfeiture judgment to be vacated so that Tate could be afforded the opportunity to appear in court and challenge the forfeiture, which is "a right secured by the Due Process Clause." (App. Vol. 3 at 26 (quoting *Degen v.*

*United States*, 517 U.S. 820, 822 (1996).) We granted the State's motion to remand and dismissed Tate's appeal without prejudice, explicitly ordering: "if any part of the trial court's forthcoming ruling is adverse to [Tate], [Tate] may, after filing a new notice of appeal, raise the issues he would have raised in this appeal along with any new issues created by the Trial Court's ruling on remand." (App. Vol. 3 at 31.)

Back in the forfeiture court, Tate moved for a change of judge, which was granted. Tate then requested clarification of the issues before the court, as Tate believed he should be defending the forfeiture of his Suburban and the $3,047. Following further pleadings by the parties, the forfeiture court ordered:

> 3. Many of the pleadings filed by [Tate] in this case question the propriety of previous rulings by Magistrate Ross, Magistrate Kitch and Judge Felts. This Court would like to state with clarity that it does not and will not in any fashion review and/or reverse any previous rulings in this case made prior to accepting jurisdiction in this case. The only way those rulings can be challenged is in a subsequent appeal that the aforesaid Order of the Court of Appeals mentioned.
>
> 4. Thus, among other such previous ruling[sic], this case has been dismissed as to the 2002 Black GMC Suburban, and neither that dismissal nor the disposition of that vehicle to a previous lienholder will be subject of any subsequent trial of this case.

(*Id*. at 64.) Tate attempted to appeal that order, but his appeal was dismissed with prejudice.

[8]   Tate then filed a motion requesting an evidentiary hearing on the admissibility of evidence collected after his Suburban was stopped in 2012 and a motion requesting he be allowed to subpoena Detective Kirschner. The State responded to his motion by asserting *res judicata*. The forfeiture court denied Tate's requests for a hearing and for a subpoena, and it scheduled the forfeiture trial for November 18, 2016. Tate requested a continuance because he had not been notified of the new trial date; he asked the court to reconsider its order denying the evidentiary hearing and subpoena; and he asked the court to certify its denial of the evidentiary hearing and subpoena for interlocutory appeal. The court granted his motion to continue and denied his other motions. Tate also requested the court grant him the ability to send a subpoena duces tecum to Check Smart, and the forfeiture court granted that request and reset trial for March 3, 2017.

[9]   On February 23, 2017, when Check Smart had not responded to Tate's subpoena, Tate requested another continuance. The forfeiture court denied that continuance because Check Smart filed the materials and would appear at trial. After the hearing, at which Tate appeared *pro se*, the forfeiture court entered the following findings and judgment:

> 1.  The property in question, Three Thousand Forty-seven dollars ($3047.00) United States Currency is property subject to forfeiture under the provisions of IC 34-23-1-1.
>
> 2.  Defendant was convicted of a Class A Felony, Dealing in Cocaine, or Narcotic Drug, and Possession of Marijuana, Hash Oil, Hashish, Salvia or a Synthetic Cannabinoid, a Class A

Misdemeanor for an incident and arrest that took place on June 21, 2012.

3. The facts of Tate's arrest, his conduct when stopped for a traffic violation, the contents of his motor vehicle, the results of his strip search, and the cocaine found secreted in a body cavity of Tate, and the manner that it was wrapped was all detailed by the testimony of Detective Marc Deshaies a Detective in Vice and Narcotics of the Fort Wayne Police Department.

4. In Tate's vehicle were three large bundles of cash totaling $3000.00, and $47 in cash was in his pants pocket.

5. Tate offered in evidence proof of reservation of a place for marriage and his marriage certificate dated 11th day of July, 2012.

6. He testified that his mother had loaned him $4000.00 for his marriage, and that sum was to be repaid to her out of an insurance settlement check he was expecting, and that the cash seized was the balance he had on hand from the loan.

7. The State of Indiana also put in evidence the sum of $9948.00 in law enforcement costs.

8. I.C.34-24-1-1(d) provides that money found on or near a person who is committing one of the enumerated offenses is presumed forfeitable. Or put another way can be presumed to be or have been used to violate a criminal statute.

9. The Court finds that Tate has not proven by credible evidence that the presumption has been rebutted

10.  The Court finds the State of Indiana has proven by the greater weight of the evidence that the property sought in forfeiture in this case was used for the purpose of committing dealing in cocaine, an enumerated offence under IC 34-24-1-1.

Therefore the Court enters judgment in favor of the State of Indiana.  The $3047.00 in United States Currency is Ordered forfeited. . . .

(Appellant's Br. at 46-47 (errors in original).)  Tate filed a motion to correct error, which the forfeiture court denied.

# Discussion and Decision[1]

[10]    Prior to addressing Tate's arguments on appeal, we note he is proceeding *pro se*. *Pro se* litigants "are held to the same standard as trained counsel and are required to follow procedural rules."  *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014).  We will neither indulge benevolent presumptions in his favor nor ignore rules controlling the "orderly and proper conduct of appeal[s]." *Id*. (quoting *Ankeny v. Governor of State of Indiana*, 916 N.E.2d 678, 689 (Ind. Ct. App. 2009), *reh'g denied, trans. denied*).

[11]    Tate appeals from the forfeiture court's denial of his motion to correct error. We review the denial of a motion to correct error for an abuse of discretion.

---

[1] On August 14, 2018, Tate filed a motion asking us to issue an order "explaining the status of the above referenced cause and/or when is a determination likely to be issued."  (Motion for Status/Determination of Case at 1.)  As the issuance of this opinion renders Tate's motion moot, we do not address it.

*Spaulding v. Cook*, 89 N.E.3d 413, 420 (Ind. Ct. App. 2017), *trans. denied*. An abuse of discretion occurs if the court's decision was contrary to law or was against the logic and effect of the facts and circumstances that were before the court. *Id.* "However, to the extent the issues raised on appeal are purely questions of law, our review is *de novo*." *McGee v. Kennedy*, 62 N.E.3d 467, 470 (Ind. Ct. App. 2016) (reviewing subject matter jurisdiction *de novo* on appeal from denial of motion to correct error).

[12]     Tate has provided us a copy of neither his motion to correct error nor the forfeiture court's order denying his motion.[2] Without these documents, which would demonstrate not only the errors Tate alleged but also, possibly, the trial court's reasoning for denying his motion, it is impossible for us to discern whether the forfeiture court abused its discretion in denying his motion. *See, e.g.*, *Meisberger*, 15 N.E.3d at 659 (where appellant failed to provide transcript of evidence to demonstrate error alleged in denial of motion to correct error, error waived for appeal). "An error alleged but not disclosed by the record is not a proper subject for our review." *In re Marriage of Snemis*, 575 N.E.2d 650, 655 (Ind. Ct. App. 1991) (holding court could not review issues surrounding wife's motion to correct error when she had not filed supplemental record containing

_____

[2] Tate has provided us with a copy of the electronic notice that he received of the court's denial of his motion to correct error. (Appellant's App. Vol. 2 at 64.) That notice provides an internet address to which recipients were directed to obtain a copy of the order denying his motion. However, courts of appeal do not assemble the record necessary to review the issues raised by appellants; production of the portions of the Appellate Record necessary to address the issues raised on appeal is a task our Supreme Court has assigned to parties. *See* Ind. Appellate Rule 49 (explaining when parties may file an appendix).

necessary portions of record). Waiver notwithstanding, we review Tate's arguments for fundamental error, which is "blatant error that denies the defendant due process." *Woods v. State*, 98 N.E.3d 656, 665 (Ind. Ct. App. 2018), *trans. denied*.

### Issues surrounding the original traffic stop

[13] Tate asserts a number of issues arising from the initial stop of his vehicle by Detective Deshaies. He argues the forfeiture court erred when it denied his request for a pre-trial hearing on his motion to suppress the evidence collected when Tate was stopped, based on Detective Deshaies not having probable cause for the traffic stop. Tate argues the forfeiture court abused its discretion when it denied his request to subpoena Detective Kerschner, who ordered Detective Deshaies to conduct the traffic stop of Tate because Detective Kerschner had seen Tate commit traffic violations. Finally, Tate challenges the validity of the State's assertion of *res judicata* as to the validity of the traffic stop.

[14] *Res judicata* is a doctrine that prevents "repetitious litigation of disputes that are essentially the same." *Earl v. State Farm Mut. Auto. Ins. Co.*, 91 N.E.3d 1066, 1074 n.5 (Ind. Ct. App. 2018), *trans. denied*. The doctrine includes both claim preclusion and issue preclusion. *Id*. Claim preclusion prohibits parties from litigating an action when a final judgment on the merits has been rendered on the same claim between the same parties. *Id*. Issue preclusion prohibits litigation of a fact or issue if that fact or issue was necessarily adjudicated in a prior lawsuit between the parties. *Id*.

The opinion deciding Tate's direct appeal states:

> Tate first argues that the trial court erred in admitting into evidence the cocaine found in his possession. Specifically, Tate contends that Detective Deshaies did not have a lawful basis for initiating the stop of Tate's Suburban, the detective should have issued Tate a ticket and allowed him to go, and the detective was not credible. Tate has waived appellate review of this issue for two reasons.
>
> First, although Tate originally challenged the admission of this evidence through a motion to suppress, he appeals following a completed trial and thus challenges the admission of the evidence at trial. Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the issue on appeal. Because Tate failed to object to the admission of this evidence when it was introduced at trial, he has waived appellate review of this issue. Second, in the argument section of his appellate brief, Tate has failed to cite to relevant legal authority. Therefore, pursuant to Indiana Appellate Rule 46(A)(8)(a), Tate has waived this issue on appeal.
>
> Waiver notwithstanding, we find no error. The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. The police may stop an individual for investigatory purposes if, based on specific, articulable facts, the officer has a reasonable suspicion that criminal activity is afoot. It is well settled that a police officer may stop a car when he observes a minor traffic violation.
>
> Indiana Code section 9-21-8-2(a) requires cars traveling on a two-lane road to remain on the right half of the road. There are listed exceptions; however, none of them apply here. Detective Kirschner, who was driving an unmarked police car, told

Detective Deshaies that she saw Tate cross the center line several times. Detective Deshaies, who was driving a car with police emergency lights, stopped Tate's vehicle. Tate appears to believe that Detective Deshaies did not have a reasonable basis to stop him because Detective Deshaies did not see Tate cross the center line.

However,

> [u]nder the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation. . . . A primary focus in the imputed knowledge cases is whether the law enforcement officers initiating the search or arrest, on whose instructions or information the actual searching or arresting officers relied, had information that would provide reasonable suspicion or probable cause to search or arrest the suspect.

In addition, in order to rely on the collective-knowledge doctrine, the knowledge sufficient for reasonable suspicion must be conveyed to the investigating officer before the stop is made.

Here, Detective Kirschner, who was involved with the investigation, saw Tate cross the center line of traffic. This traffic violation provided the detective with reasonable suspicion to stop Tate's car. Because she was in an unmarked police car, Detective Kirschner conveyed her observation of the violation to Detective Deshaies, who was driving a car with police emergency lights. Under the collective-knowledge doctrine, Detective Kirschner provided this information to Detective Deshaies before

the stop was made, which justified his stop of Tate's Suburban. Accordingly, Detective Deshaies had reasonable suspicion to stop Tate's Suburban. We find no Fourth Amendment violation, and the trial court did not err in admitting the cocaine into evidence.

*Tate*, 31 N.E.3d 34, at *5-*7 (internal citations omitted). The Court then held the admission of the cocaine also did not violate Article 1, Section 11 of the Indiana Constitution because the stop was proper. *See id.* at *7. Finally, in a footnote, the Court stated: "To the extent Tate argues that the detective should have issued Tate a ticket and allowed him to go, and that the detective was not credible, we note that these are arguments for the fact finder and not viable contentions on appeal." *Id*. at *7 n.2.

[16] Because our Court held in Tate's direct appeal that "Detective Deshaies had reasonable suspicion to stop Tate's Suburban[,]" *id*. at *7, the parties to that action may not re-litigate the propriety of the stop of Tate's Suburban. *See Higgason v. Stogsdill*, 818 N.E.2d 486, 492 (Ind. Ct. App. 2004) (holding any claim based on an issue already decided against Higgason in federal court was prohibited by *res judicata*), *trans. denied*. Because Tate could not re-litigate the admissibility of evidence collected when he was stopped, the forfeiture court did not err when it denied Tate's motion to set a hearing on his motion to suppress; nor did it err when it denied Tate's motion to subpoena Detective Kirschner to testify to that issue. *See*, *e.g.*, *Terex-Telelect, Inc. v. Wade*, 59 N.E.3d 298, 304 (Ind. Ct. App. 2016) (trial court did not abuse its discretion by refusing to admit evidence on issue barred by the law of the case doctrine), *trans. denied*.

### *Denial of motion to continue*

[17] Tate's issue statement indicates the "court abused its discretion by not granting Tate's Motion for Continuance Due to Absence of Evidence." (Appellant's Br. at 28.) Tate did not, however, provide citation to any authority, in either of his briefs, to support his argument or explain our standard of review. As such, Tate has waived this argument for appellate review. *See K.S. v. D.S.*, 64 N.E.3d 1209, 1212 (Ind. Ct. App. 2016) ("A party waives any issue for which it fails to develop a cogent argument or support with adequate citation to authority.") (quoting *Zoller v. Zoller*, 858 N.E.2d 124, 127 (Ind. Ct. App. 2006)).

[18] Waiver notwithstanding, Tate has not demonstrated the forfeiture court committed error. The grant or denial of a motion to continue is within the trial court's broad discretion. *Tharpe v. State*, 955 N.E.2d 836, 843 (Ind. Ct. App. 2011), *trans. denied*. "An abuse of discretion occurs when the ruling is against the logic and effect of the facts and circumstances before the court or where the record demonstrates prejudice from denial of the continuance." *Id*.

[19] Tate requested the motion to continue because he had not received the subpoenaed documents from Check Smart; however, those documents were produced at trial and a witness from Check Smart testified, such that the original impetus for his motion no longer existed when the hearing began. In addition, when the forfeiture trial began, Tate neither reasserted his motion for

continuance nor indicated to the court that he was unprepared to proceed.[3] (*See* Tr. 03-03-17 at 3.) Under these facts, Tate has not demonstrated the forfeiture court erred when it did not grant his motion for continuance. *See, e.g., Zanussi v. State*, 2 N.E.3d 731, 734 (Ind. Ct. App. 2013) (court did not abuse discretion in denying continuance filed day before trial when continuance did not assert ground asserted on appeal and when counsel told court he could be ready for trial).

### Exclusion of Tate's mother

[20] Tate next argues the forfeiture court abused its discretion by prohibiting Tate's mother from participating in the forfeiture trial "by telecommunications." (Appellant's Br. at 31.) In support of his argument, Tate cites Indiana Code section 31-21-4-6, which states:

> An Indiana court may permit a person residing in another state to be deposed or to testify by:
>
> (1) telephone;
>
> (2) audiovisual means; or

---

[3] Tate complains that his mother was not at trial, but he also admits that, before the court had granted or denied his motion to continue, he told his mother not to travel to Indiana for the trial. Moreover, as Tate did not assert the absence of his mother as a reason to delay the trial when it began, he has waived this argument for appeal. *See, e.g., Zanussi v. State*, 2 N.E.3d 731, 734 (Ind. Ct. App. 2013) (court did not abuse discretion in denying continuance filed day before trial when continuance did not assert ground asserted on appeal and when counsel told court he could be ready for trial).

(3) other electronic means;

> before a designated court or another location in that state. An Indiana court shall cooperate with courts in other states in designating an appropriate location for the deposition or testimony.

Tate notes that statute does not require the court to allow his mother to testify by telephone, but "[s]trictly in the spirit of equity, Tate should have been afforded some leeway to present his defense." (Appellant's Br. at 33.) Tate also takes issue with the court's statement that it did not have the "capacity" to permit Tate's mother to participate telephonically, (Tr. 3-03-17 at 58), when there were at least three telephones in the courtroom during trial.

[21] Tate seems to be ignoring the final portion of that statute, which indicates the testimony given by a person in another state should occur while that person is "before a designated court or another location [that is] an appropriate location for the deposition or testimony." I.C. § 31-21-4-6. Out-of-state telephonic testimony requires more control than simply calling someone on the telephone and allowing that person to speak. The court needs to be able to confirm the identity of the person speaking and place that person under oath. Furthermore, Tate's request for telephonic testimony from his mother did not occur until mid-trial, when an affidavit from Tate's mother was excluded based on the State's hearsay objection. We cannot say the trial court abused its discretion when it denied Tate's abrupt mid-trial motion to call his mother on the telephone. *See*,

*e.g.*, *Tamasy v. Kovacs*, 929 N.E.2d 820, 830-31 (Ind. Ct. App. 2010) (no abuse of discretion in denial of telephonic testimony).

### Sufficiency of evidence for forfeiture of cash[4]

[22] When we review the sufficiency of evidence to support a civil judgment, "we consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn therefrom. *Gonzalez v. State*, 74 N.E.3d 1228, 1230 (Ind. Ct. App. 2017). We cannot reweigh the evidence or assess the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the judgment, we will affirm. *Id.* "We will reverse only when we are left with a definite and firm conviction that a mistake has been made." *Id.*

[23] The court may order forfeiture of money:

> (A) furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute;
>
> (B) used to facilitate any violation of a criminal statute; or
>
> (C) traceable as proceeds of the violation of a criminal statute.

---

[4] Tate also challenges the forfeiture of his Suburban, but his Suburban was not forfeited. Instead, it was dismissed from the forfeiture action. As Tate does not argue it was improperly dismissed from this action, there is no issue for us to review. If Tate believes the Fort Wayne Police Department mishandled his property, that is a matter to be raised in a different cause of action.

Ind. Code § 34-24-1-1(a)(2). For the State to obtain forfeiture, it must demonstrate by a preponderance of the evidence that the property meets the statutory requirement for forfeiture. *See Lipscomb v. State*, 857 N.E.2d 424, 427 (Ind. Ct. App. 2006) (citing Ind. Code § 34-24-1-4(a)). However, when money is seized from a person committing specified crimes, our legislature created a "rebuttable presumption" that money was used to facilitate the crime:

> Money . . . found near or on a person who is committing, attempting to commit, or conspiring to commit any of the following offenses shall be admitted into evidence in an action under this chapter as prima facie evidence that the money . . . is property that has been used or was to have been used to facilitate the violation of a criminal statute or is the proceeds of the violation of a criminal statute:
>
> (1) IC 35-48-4-1 (dealing in or manufacturing cocaine or a narcotic drug . . . .

Ind. Code § 34-24-1-1(d).

[24] Tate was convicted of dealing in cocaine because police found, between his buttocks, toilet paper wrapped around a plastic bag that contained "nine (9) baggies with powder cocaine in them and six (6) baggies that contained crack cocaine." (Tr. 03-03-17 at 26.) As such, the $3,000 found in the console of his vehicle, from which he was arrested, and the $47 found in his pants pockets when arrested are presumed to have been used to facilitate his dealing in cocaine. Detective Deshaies testified at the forfeiture trial that the $3,000 "was bundled in three (3) separate bundles with rubber bands." (*Id*. at 24.) Detective

Deshaies also testified that bundling is "very consistent with monies that are used for drug transactions." (*Id*.) When Tate was booked into the Allen County Jail, he admitted he had "no job." (*Id*. at 31.) Detective Deshaies was asked why he thought the money was linked to drug dealing, and he responded:

> The proximity of the drugs to the money is one (1) of them, the method of packaging within the money is very consistent with drug dealing, the quantity of drugs involved in this case, the secreting of them, the packaging of the drugs and the multiple types of drugs in this case are all consistent with drug dealing.

(*Id*. at 45.)

[25] Tate testified that the $3,000 was money that he borrowed from his mother to pay for his upcoming wedding and that he was to pay his mother back when he cashed the insurance settlement check he was expecting, which was to be in excess of $11,000.[5] However, Tate is asking us to reweigh the evidence, which we are not permitted to do. *Gonzalez*, 74 N.E.3d at 1230. In light of the proximity of the cash to the fifteen baggies of cocaine Tate had secreted in his buttocks, we cannot say the forfeiture court committed clear error when it determined Tate had not rebutted the statutory presumption that the money found near and on Tate when he was arrested for dealing in cocaine was money

---

[5] Tate's witness from Check Smart confirmed that an $11,450.26 check written to Tate was cashed on June 21, 2012, at 12:20 p.m. (Tr. 3-3-17 at 53; *See also* Ex. Vol. at 45 (printout of Tate's "check history" with Check Smart).) Detective Deshaies testified Tate was arrested at 1:20 a.m. on June 21, 2012. Tate did not assert at trial, and he has not asserted on appeal, that the $3,000 found in his Suburban was the partial proceeds of that substantial check, presumably because the records indicate the check was cashed after Tate was arrested.

that had been used or would have been used to facilitate dealing in cocaine. *See, e.g., Cantrell v. Putnam Cty. Sheriff's Dept.*, 894 N.E.2d 1081, 1086 (Ind. Ct. App. 2008) (State demonstrated nexus between vehicle and possession of cocaine where defendant used vehicle to take seven grams of cocaine to Kansas and bring six grams of cocaine back to Indiana).

# Conclusion

[26] As none of Tate's underlying assertions have merit, we cannot hold the trial court abused its discretion in denying Tate's motion to correct error. Accordingly, we affirm the forfeiture of Tate's $3,047.

[27] Affirmed.

Riley, J., and Mathias, J., concur.