## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 31 2018, 11:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald Graham,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 31, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1346<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia A. Gooden, Judge<br><br>The Honorable Richard Hagenmaier, Commissioner<br><br>Trial Court Cause No.<br>49G21-1702-F3-6381 |

**Crone, Judge.**

# Case Summary

Ronald Graham appeals his convictions for three counts of level 4 felony dealing in a narcotic drug. He argues that the trial court abused its discretion by denying his motion for a continuance. Concluding that Graham suffered no prejudice, we affirm.

# Facts and Procedural History

On January 24, 2017, Indianapolis Metropolitan Police Department ("IMPD") Detective Daryl Jones, working undercover, telephoned Graham to arrange the purchase of two grams of heroin. Detective Jones and Graham met at an automotive shop parking lot. Graham arrived at the parking lot in a maroon Malibu. Graham got into Detective Jones's vehicle, Detective Jones gave Graham $200, and Graham gave Detective Jones what appeared to be heroin. The same scenario was repeated on February 1 and 14, 2017, except that Graham was in different vehicles.

During all three transactions, Detective Jones wore audio recording equipment, and in the last transaction, he drove a car with a video camera inside. Detective Richard Hemphill conducted surveillance of all three buys and created a photo array from which Detective Jones identified Graham as the person who sold him heroin. Detective Hemphill learned where Graham lived and observed two of the vehicles that Graham had been seen in at that address. Detective Jones took the substances he procured from the three buys to the IMPD property room, where personnel performed preliminary testing, which

reported that all three substances contained heroin ("IMPD preliminary lab reports"). The IMPD preliminary lab reports yielded the following weights: the substance from the January 24 transaction weighed 2.17 grams, and the substances from the February 1 and 14 transactions each weighed 1.65 grams. Appellant's App. Vol. 2 at 23-24 (probable cause affidavit). On February 15, 2017, police arrested Graham as he was leaving the auto shop parking lot. On February 16, 2017, the State charged Graham with level 3 felony possession of a narcotic drug, three counts of level 4 felony dealing in a narcotic drug, three counts of level 6 felony dealing in a narcotic drug, class A misdemeanor carrying a handgun without a license, and class B misdemeanor possession of marijuana.

[4] On March 6, 2018, the State dismissed all the charges except the level 4 felony dealing charges, which alleged that Graham knowingly or intentionally delivered at least one but less than five grams of pure or adulterated heroin. On March 8, 2018, Graham's trial was held. That morning, defense counsel requested a continuance because the State was planning to introduce late-discovered evidence regarding lab testing of the substances that Graham sold to Detective Jones during the three buys. The prosecutor explained to the trial court that the previous day, Detective Hemphill had informed him that the lab report that was disclosed to Graham during discovery did not contain results regarding the substances recovered during the three buys; instead, that lab report contained lab results regarding the drugs found on Graham when he was

arrested.[1] The prosecutor informed the trial court that as soon as he learned of the error, he informed defense counsel and had the Marion County Forensic Agency ("Crime Lab") conduct testing overnight, which would be complete by the end of the hour. The prosecutor further stated that the IMPD preliminary lab reports indicated that the substances contained heroin, and he had already been informed by the Crime Lab's head chemist, Glen Maxwell, that testing of one substance was complete and confirmed that it contained heroin. The prosecutor noted that defense counsel had stipulated to the admission of the IMPD preliminary lab reports.

[5] Defense counsel objected that she had not had a chance to review the evidence or depose Maxwell and expressed concerns that the Crime Lab's rushed testing might not have conformed to normal testing procedures. The trial court declined the initial request for a continuance but informed defense counsel that she would have an opportunity to talk to Maxwell before the presentation of evidence "for however long they needed," and that it would revisit the matter if there was anything out of the ordinary regarding the procedures used by the Crime Lab to test the substances. Tr. Vol. 2 at 7.

[6] After defense counsel spoke with Maxwell, she again objected to the Crime Lab reports and requested either exclusion of the reports or a continuance. Defense counsel conveyed the following concerns: the IMPD preliminary lab reports

_____

[1] The record does not reveal the nature of this lab report. Presumably, this lab report is not an IMPD preliminary lab report.

showed different weights than the Crime Lab reports; other substances were present in the samples that the Crime Lab did not identify; and the Crime Lab testing was conducted too quickly. Defense counsel argued that the admission of the Crime Lab testing at that late stage left Graham with no opportunity to independently test the evidence, which impaired his right to confront and cross-examine witnesses. The trial court observed that defense counsel had received the IMPD preliminary lab reports, which showed that the substances from all three buys contained heroin and weighed more than one gram, yet the defense had not sought to test or weigh the evidence prior to trial. The trial court concluded that defense counsel's concerns addressed the weight of the evidence rather than its admissibility and denied Graham's request for exclusion and for a continuance.

[7] During trial, Maxwell testified that the substance from the first buy contained heroin and weighed 1.35 grams, the substance from the second buy contained heroin and weighed 1.14 grams, and the substance from the third buy contained heroin and weighed 1.56 grams. *Id.* at 123-25. On cross-examination, defense counsel questioned Maxwell as to the typical time it would take to complete the testing done in this case and how long he actually took to perform the tests on the substances from the three buys. *Id.* at 126-27. Maxwell explained that it usually took an hour to perform the test on a substance and that he had spent about two hours testing the three substances in this case. *Id.* at 127. Defense counsel asked Maxwell whether there were other substances in the heroin, and he replied that there were but that he did not identify them. *Id.* Defense

counsel then asked him if there was a test to identify the other substances and determine their weight and whether he had performed such a test in this case. *Id.* at 128. Maxwell answered that there was such a test, but that he had not performed it. *Id.* Defense counsel also asked Maxwell about the weight discrepancies between the testing done in the IMPD property room and the testing done by the Crime Lab and what would cause such discrepancies. *Id.* Maxwell answered that he had seen weight discrepancies in the past; he did not know what procedure the property room personnel used, but he did know that they sometimes weighed drug evidence in its packaging or simply performed a "rough weight." *Id.* at 128-29.

[8] In closing argument, defense counsel emphasized that Maxwell had just tested the substances that day, even though the buys occurred in January and February 2017; that it usually takes an hour to perform the testing, but Maxwell performed the testing on all three samples in two hours; and that there were impurities in the samples and Maxwell knew it. *Id.* at 144.

[9] The jury found Graham guilty as charged. The trial court sentenced Graham to an aggregate term of twelve years. This appeal ensued.

## Discussion and Decision

[10] Graham argues that the trial court erred in denying his motion for a continuance. "Rulings on non-statutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice." *Maxey v. State*, 730 N.E.2d 158, 160 (Ind.

2000). "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the trial court." *Tolliver v. State*, 922 N.E.2d 1272, 1281 (Ind. Ct. App. 2010), *trans. denied*. "We will not conclude that the trial court abused its discretion unless the defendant can demonstrate prejudice as a result of the trial court's denial of the motion for continuance." *Stafford v. State*, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008). Motions to allow more time for preparation "require a specific showing as to how the additional time would have aided counsel." *Zanussi v. State*, 2 N.E.3d 731, 734 (Ind. Ct. App. 2013).

[11] To convict Graham of level 4 felony dealing in a narcotic drug, the State was required to prove that he knowingly or intentionally delivered a narcotic drug, pure or adulterated, weighing at least one gram but less than five grams. Ind. Code § 35-48-4-1(a)(c). Graham argues that there was a significant discrepancy in the weight of the substance from the first buy, namely that the IMPD preliminary lab report indicated that the substance weighed 2.17 grams, but the Crime Lab report indicated that it weighed only 1.35 grams. He contends that he could not have anticipated that the Crime Lab testing would yield such a different result, and a continuance "would have allowed counsel to investigate the discrepancy in the reported weight of the drug samples, perhaps by taking depositions of the property room staff, or to question the State's newly-disclosed witness Maxwell about the testing process he used." Appellant's Br. at 12. The State argues that reversal is unwarranted because Graham is unable to demonstrate prejudice. We agree with the State.

[12] Here, the record shows that initially defense counsel had stipulated to the admission of the IMPD preliminary lab reports, which showed that the substances contained heroin and weighed between one and five grams. When the State sought to introduce the results of the Crime Lab testing through Maxwell, the trial court provided defense counsel the opportunity to speak with Maxwell before the presentation of evidence "for however long they needed." Tr. Vol. 2 at 7. Defense counsel availed herself of the opportunity and was able to conduct an effective cross-examination of Maxwell during trial. Through her cross-examination, Maxwell admitted that he spent less than the typical amount of time on the testing; that there were impurities in the samples that had not been identified or weighed; and that the weight determined by the Crime Lab testing was different from that shown by the IMPD preliminary lab testing. In closing argument, defense counsel emphasized the last-minute and rushed character of the Crime Lab testing and the existence of impurities in the samples. She also stressed that the weight of the substance from the first buy as indicated by the Crime Lab testing was well below that indicated in the IMPD preliminary lab report, and she explained that the weight of the substances was important because Graham was charged with dealing between one and five grams. Although the two reports yielded different weights, both yielded weights that were within the charged range. Accordingly, we cannot say that Graham suffered any prejudice from the trial court's denial of his motion for a continuance. Therefore, we affirm his convictions.

[13] Affirmed.

Vaidik, C.J., and Mathias, J., concur.